(241 P.3d 167)
No. 100,893

L.E.H., a Minor Child, by and through D.H., *Appellant*, v. STATE
OF KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION
SERVICES, *Appellee*.

Opinion filed
October 22, 2010.

*Craig E. Collins and Donna L. Huffman*, of Law Office of Craig E. Collins, of
Topeka, for appellant.

*Matthew W. Boddington*, regional attorney, of Kansas Department of SRS, for
appellee.

Before LEBEN, P.J., GREEN and CAPLINGER, JJ.

LEBEN, J.: Everyone agrees that Christopher spanked his daughter, L.E.H., but not everyone agrees that the spanking was child abuse. Her mother, Donna, sought a determination that he had abused L.E.H. The hearing officer who heard the testimony of the mother, father, daughter, and a physician determined that the father had committed abuse, but an agency appeals committee ruled that the evidence was insufficient because (1) the medical doctor "did not testify with 100 percent certainty" that the father's actions had caused the daughter's substantial bruising and (2) no one had shown that the father was a danger to other children. We find that

the appeals committee applied a too rigid burden of proof and misread the statute and regulation at issue here; we therefore send this case back to the administrative agency for further proceedings that will apply the proper legal standards.

## FACTUAL AND PROCEDURAL BACKGROUND

L.E.H. is the daughter of Donna and Christopher, and she lives primarily with Donna. In May 2005, while L.E.H. was on a weekend visit with Christopher when she was 7 years old, she used nail polish while riding in Christopher's car, which was not allowed. Everyone agrees that Christopher spanked L.E.H. when they got home. According to the girl, her father spanked her on her bare bottom many times in punishment. Christopher said he spanked her through her clothing more than once but that he couldn't remember how many times.

After L.E.H. returned to her mother's home, Donna noticed bruising on the daughter's buttocks. She took the child to her pediatrician, Dr. Harold Parr, who determined that the bruising was consistent with a spanking and not with an accidental trauma. Dr. Parr reported the incident to law-enforcement authorities, stating: "These bruises could only have been caused by someone using significantly excessive force in the spanking and this type of injury represents child abuse by any definition that I know of."

The Kansas Department of Social and Rehabilitation Services (SRS) conducted an investigation. Within 2 months, SRS mailed a notice to Donna advising that the allegation of child abuse was unsubstantiated. Donna requested an evidentiary hearing (what SRS refers to as a "fair hearing"), but SRS denied that request. Donna appealed that decision to the Shawnee County District Court, which ordered SRS to hold the requested hearing.

At that hearing, L.E.H. testified that after she had returned home that day, Christopher had spanked her on her bare bottom with his hand "[l]ots" of times. She said she had cried and asked him to stop. She testified that her bottom hurt when she sat down—even when wearing underwear. During cross-examination, though, she said that after the spanking she had played outside on

"some big rocks" and slides. But she denied that she had slid down the rocks or fallen down.

Christopher testified that although he couldn't recall how many times he spanked her, L.E.H. was fully clothed and he only used his hand. He agreed that L.E.H. had cried during the spanking but did not remember her asking him to stop. Christopher said that L.E.H. played with the kids next door later in the day and that she never complained she had been hurt. Christopher said that the spanking couldn't have caused the bruising and that the most likely explanation was that she injured herself while playing outside.

Dr. Parr testified that he had examined L.E.H. 3 days after the spanking. He observed no other injuries beyond the bruising to her buttocks. Dr. Parr said he determined that the bruises were consistent with a hand spanking done with excessive force and that they were not consistent with any sort of accidental trauma, such as falling down. But Dr. Parr declined on cross-examination to agree with SRS counsel's characterization that the doctor had testified on direct examination that the bruising could *only* have been inflicted by a spanking.

Kolissa Tate, a former SRS employee who had investigated this abuse allegation, said that she had found the allegation unsubstantiated after she and her supervisor concluded that it didn't meet the criteria for physical abuse under an SRS regulation. She said that she'd seen more significant bruising in other cases and that the photographs of the bruises did not show a hand print or "anything that's clear and convincingly the result of a spanking." She said that because no one was with L.E.H. "every minute of the day," there was no way to know what else had occurred after the spanking. She also said that for abuse to be substantiated, there must be clear and convincing evidence that the perpetrator is a danger to all children, not just the one involved in the allegation.

The administrative hearing officer who heard this testimony entered an initial order finding that the alleged abuse against L.E.H. by Christopher had been established by clear and convincing evidence. But SRS sought review before the agency's state appeals committee, as provided for in K.S.A. 75-37,121 and 77-527. Based on its review of the record and without oral argument, the com-

mittee reversed the decision. While it found that L.E.H. had physical injuries to her buttocks and that Dr. Parr's testimony was sufficient to support the position that the injuries were caused by nonaccidental trauma, the committee found that it couldn't attribute the injuries to an act by Christopher because "Dr. Parr did not testify with 100 percent certainty that the bruising was caused from a spanking."

The appeals committee concluded that the SRS regulation governing the substantiation of a "perpetrator" of abuse, K.A.R. 30-46-10(j), requires that two things be proven by clear and convincing evidence: (1) that an act of abuse was committed and (2) that the perpetrator is a danger to children generally. See K.A.R. 30-46-10(a) (defining abuse). The committee found that there was clear and convincing evidence that Christopher had spanked L.E.H. and that the child had bruising on her buttocks. But the committee found that the evidence was insufficient to meet either of the required tests under the regulation. First, the committee found the evidence wasn't sufficient to conclude that the bruising was caused by the spanking. Second, the committee found that the evidence wasn't sufficient to conclude that Christopher is a threat to children in general: "One cannot assume that because one child was spanked on one occasion, the perpetrator of the spanking is a danger to all children." The committee thus found the abuse allegation unsubstantiated.

Donna appealed to the district court, which affirmed the agency finding. The district court noted that the agency's conclusion that there was insufficient proof that the spanking had caused the bruising was what's considered a "negative" finding, which meant that it had to be upheld by the court unless the agency had disregarded undisputed evidence or the agency had been motivated by bias, passion, or prejudice. See *General Building Contr., LLC v. Board of Shawnee County Comm'rs*, 275 Kan. 525, 541, 66 P.3d 873 (2003). The court said that it was "likely that this Court would not have reached the same conclusion" had it reviewed the matter independently but that it could not overturn the agency's order under the negative-findings standard. The district court did not determine whether proof that a perpetrator was a danger to all

children was required to substantiate an abuse allegation; the court concluded that because the appeals committee "would have reached the same conclusion" whether the test had one part (abuse of one child) or two (abuse of one child plus danger to all children), it did not need to address that legal issue.

## STANDARD OF REVIEW

We review the decision of a state agency under the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.* Donna has the burden to show agency error, which on the facts of this case is argued on primarily three bases: (1) that the agency misinterpreted the law, K.S.A. 77-621(c)(4); (2) that the agency has made a factual finding central to its decision that substantial evidence does not support, K.S.A. 77-621(c)(7); and (3) that the agency's action is otherwise unreasonable, arbitrary, or capricious. K.S.A. 77-621(c)(8). We are obligated to make an independent determination without any required deference to the district court. See *Jones v. Kansas State University*, 279 Kan. 128, 140, 106 P.3d 10 (2005).

After appellate briefs were filed, the Kansas Legislature made some changes to the Kansas Judicial Review Act, which were effective July 1, 2009. See L. 2009, ch. 109, sec. 28 (amending K.S.A. 77-621). But we must review the administrative action under the statute as it existed when the agency action was taken. *Redd v. Kansas Truck Center*, 291 Kan. 176, Syl. ¶ 1, 239 P.3d 66 (2010). We therefore review the record to determine whether the agency's determination was supported by evidence "that is substantial when viewed in light of the record as a whole." K.S.A. 77-621(a)(7). Thus, we look to determine whether relevant evidence of substance supports the decision, even if there may be some contrary evidence. *Redd*, 291 Kan. at 183-84. "Substantial evidence . . . furnishes a basis of fact from which an issue can be resolved reasonably." *Graham v. Dokter Trucking Group*, 284 Kan. 547, 553, 161 P.3d 695 (2007).

Whether abuse occurred is determined based on the statutes and regulations in effect at the time it allegedly happened. We therefore generally cite in this opinion to the statutes and regulations in effect at that time. Some of the duties of SRS to handle

reports of child abuse were then found in the Kansas Code for Care of Children, K.S.A. 38-1501 *et seq*., which was recodified effective January 1, 2007, as the Revised Kansas Code for Care of Children, K.S.A. 2009 Supp. 38-2201 *et seq*. For the sections we reference in this opinion from those codes, the newer provisions are essentially the same as their predecessors; we have provided citations to both for the convenience of the reader.

I.  *SRS Wrongly Interpreted Its Own Regulation to Require that a Person Be a Danger to All Children Before the Person Could Be Substantiated for Committing an Act of Physical Child Abuse.*

This case revolves around a series of related statutes and administrative regulations, and one of those regulations is at the center of the dispute. Before we discuss the specific statutes and regulations, we note the role of regulations adopted by an administrative agency and our rules for interpreting them. When an administrative agency adopts a regulation within the agency's statutory authority, that regulation has the force and effect of law. See K.S.A. 77-425; *Tonge v. Werholtz*, 279 Kan. 481, 483-84, 109 P.3d 1140 (2005). The parties agree that SRS adopted the regulations at issue in this case within its statutory authority. Courts generally give deference to an agency's interpretation of its own regulation unless it's clearly wrong or inconsistent with the regulation. *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, Syl. ¶ 3, 49 P.3d 1274, *cert. denied* 537 U.S. 1088 (2002). But when a regulation's meaning is clear from the plain language used in it, a court generally should give the regulation its plain-language meaning. See *Ussery v. Kansas Dept. of SRS*, 258 Kan. 187, 194, 899 P.2d 461 (1995).

SRS is charged with the responsibility to receive and investigate reports of child abuse for the purpose of determining whether the report is valid and whether action is required to protect a child. K.S.A. 38-1523(a); see K.S.A. 2009 Supp. 38-2226(a). Moreover, there are ramifications of an SRS finding of abuse beyond determining whether action is required to protect a specific child; thus, these interrelated statutes must be considered when interpreting K.S.A. 38-1523(a). The Kansas Legislature has separately provided

that no person running a child-care facility may knowingly let any person who has committed an act of physical, mental, or emotional abuse against a child reside, work, or volunteer at that facility. K.S.A. 65-516(a)(3).

The legislature has also defined what is "[p]hysical, mental or emotional abuse," which "means the infliction of physical, mental or emotional harm or the causing of a deterioration of a child." The term includes "maltreatment or exploiting a child to the extent that the child's health or emotional well-being is endangered." K.S.A. 38-1502(b); see 2009 Supp. 38-2202(x).

None of these statutes indicate that a person cannot commit abuse unless the person is a danger to all children. Nor does the statute that prevents those who have abused children from involvement in child-care facilities indicate that the person must separately be found to be a danger to all children before the prohibition on child-care involvement kicks in.

SRS contends that this requirement comes from one of its regulations, which has the force of law as we have noted. SRS points to its regulations providing the procedural steps under which it determines whether abuse has occurred. One regulation, K.A.R. 30-46-10(i), provides that a " '[s]ubstantiated abuse or neglect' " is a report of abuse or neglect that "has been confirmed by clear and convincing evidence." A separate provision, K.A.R. 30-46-10(j), then defines a " '[s]ubstantiated perpetrator' " to mean a person who has "committed an act of substantiated abuse or neglect." That provision goes on to mention "a danger to children," which SRS cites as the source of a separate legal requirement that a person be found to be a danger to all children before that person may be substantiated as a perpetrator of child abuse:

"'Substantiated perpetrator' and 'perpetrator' mean a person who has been validated by the secretary or designee, using clear and convincing evidence, to have committed an act of substantiated abuse or neglect, regardless of where the person resides and, consequently, to pose a danger to children. These terms shall replace the term 'validated perpetrator.' " K.A.R. 30-46-10(j).

But the SRS interpretation of this regulation makes no sense under either its plain language or under the statutory framework. SRS ignores the key term: "consequently," which means "as a re-

sult." American Heritage Dictionary 391 (4th ed. 2006). Replacing "consequently" with "as a result," the regulation provides, in essence: Substantiated perpetrator means a person who has been validated to have committed an act of substantiated abuse or neglect and, *as a result*, to pose a danger to children. Under the words used in this SRS regulation, no *separate* factual element is required that would prove the person is a danger to all children; a person who abuses one child is presumed a risk or danger to other children.

That makes sense under the statutory framework of K.S.A. 65-516(a)(3). We have already noted that the statute provides that a child-care provider may not knowingly allow a person who "has committed an act of physical, mental or emotional abuse or neglect or sexual abuse" to have any involvement with the child-care facility. The statute also has a second requirement, but it is ministerial, not substantive: the person's name must also be "listed in the child abuse and neglect registry" maintained by SRS. The listing requirement suggests nothing more than that SRS has determined by clear and convincing evidence that the person has committed an act of abuse. See K.A.R. 30-46-15; K.A.R. 30-46-16. SRS does not suggest otherwise. The listing requirement also allows a person to obtain removal from the list through expungement after the passage of at least 3 years or upon the discovery of new information. See K.A.R. 30-46-17(a)(1). Nothing in the language used by our legislature in K.S.A. 65-516(a)(3) even hints that a person may be involved with a child-care facility—despite having committed at least one act of child abuse—so long as there hasn't been a separate finding that the person is a danger to *all* children.

Of course, SRS does not base its claim on the statutory language. It relies on the language of K.A.R. 30-46-10(j). That language ("consequently, to pose a danger to children") simply does not support the SRS position for the reasons we've already discussed. The district court also considered the provisions of some policy manuals used internally by SRS. We have not relied upon them because they have not been adopted under the procedures used to adopt rules and regulations and thus have no legal effect. See

K.S.A. 77-425; *Bruns v. Kansas State Bd. of Technical Professions,* 255 Kan. 728, Syl. ¶¶ 1-4, 877 P.2d 391 (1994).

We are unable to give any deference to the SRS interpretation of K.A.R. 30-46-10(j) because we find no support for it either in the regulation's wording or in the related statutory provisions. SRS may have misinterpreted the regulation based on earlier regulations. Before a 2004 amendment, a person could be "substantiated" as having committed abuse if it was more likely true than not that the person had committed abuse (a lesser standard of proof than the present clear-and-convincing-evidence requirement), K.A.R. 30-46-10(e) (2003), and such a person then could be separately "validated" by a separate finding "that a substantiated perpetrator poses a danger to children and should not be permitted to operate, reside in, be employed by, or volunteer" in a child-care facility. K.A.R. 30-46-10(f) (2003). The current version of K.A.R. 30-46-10(j), adopted prior to the alleged abuse against L.E.H., eliminates the separate requirement of validation, explicitly replacing the former term "validated perpetrator" with the terms "substantiated perpetrator" and "perpetrator." Because no statute or regulation presently in effect supports the SRS position, we find that the agency erred as a matter of law when it ruled that a person must be shown to be a danger to children generally before the person may be substantiated for having committed an act of child abuse.

II.  *SRS Appears to Have Applied an Incorrect Legal Standard for what Constitutes Clear and Convincing Evidence, So We Remand for Reconsideration Under the Proper Standard.*

SRS had to determine whether Christopher committed abuse against L.E.H. K.S.A. 38-1502(b) provides that abuse includes "the infliction of physical, mental or emotional harm," and an SRS regulation, K.A.R. 30-46-10(a)(2), provides that abuse includes "any act . . . that results in . . . physical injury." The SRS appeals committee concluded that L.E.H. sustained "physical injuries to her buttocks," a finding that has not been appealed. Thus, the only factual matter at issue on appeal is whether that physical injury was caused by the spanking Christopher gave her.

To find that substantiated abuse has occurred, SRS requires that the evidence be clear and convincing. See K.A.R. 30-46-10(j). After the SRS appeals committee made its decision in this case, our Supreme Court decided *In re B.D.-Y.*, 286 Kan. 686, 187 P.3d 594 (2008), which set out a new standard for determining when evidence meets the level of clear and convincing proof. Under *B.D.-Y.*, clear and convincing evidence shows that the truth of the facts asserted is highly probable. 286 Kan. 686, Syl. ¶ 3. The SRS appeals committee did not provide any description of the way it understood the clear-and-convincing-evidence standard. In its brief on appeal, SRS argues for a very high standard, citing a definition from a decades-old edition of Black's Law Dictionary, which defined "clear and convincing proof" as "proof beyond a reasonable, *i.e.*, a well-founded doubt." Black's Law Dictionary 317 (rev. 4th ed. 1968). But the Kansas Supreme Court held in *B.D.-Y.* that the clear-and-convincing-evidence standard is an intermediate standard of proof between the preponderance standard (more likely than not) and the beyond-a-reasonable-doubt standard used in criminal cases and cited in SRS's appellate brief. See 286 Kan. 686, Syl. ¶ 2.

It thus appears likely that the SRS appeals committee applied a more difficult standard than is required by *B.D.-Y.* Dr. Parr said in his written report that "these bruises could only have been caused by someone using significantly excessive force in the spanking." He then testified that he observed bruising, but no scratches, when he examined L.E.H. He concluded that the injuries weren't caused by accidental trauma, like falling on rocks: "I can't think of a scenario where this could occur in an accidental trauma." Dr. Parr also testified about how he believed the marks shown in a photograph matched what would have occurred through a spanking.

The SRS appeals committee emphasized in its decision that "Dr. Parr did not testify with 100 percent certainty that the bruising was caused from a spanking." That conclusion is based upon a portion of the cross-examination of Dr. Parr, in which he refused to accept the SRS attorney's characterization of his earlier testimony:

"Q.   I was not able to see the demonstration that you made, so I'm going to walk you through it again. And it's your contention that you believe that these injuries were caused by a hand print or a hand spanking?

"A.   A hand spanking, yes.

"Q.   Where do you see a palm and the fingerprints in this particular picture?

"A.   Well, I don't see a palm or fingerprints. What I see is these two parallel lines here (indicating) which, as I said before, if her buttocks [were] clenched could approximate somewhat and the palm of the hand could have produced that sort of an injury. And then these linear marks here (indicating) would be consistent with the fingers.

"Q.   So you think these are finger marks?

"A.   Correct.

"Q.   Not a palm print?

"A.   Correct.

"Q.   Where's the palm print? Here in the middle?

"A.   I think the palm did that. I'm not saying that's a palm print.

"Q.   Then what are these over here (indicating)?

"A.   Well, those could also be caused by the palm of a hand.

"Q.   And these were approximately how old? When did the injuries—

"A.   A few days. Less than a week.

"Q.   Now, in your testimony before the Court previously you were not as—you said that there are other circumstances that could have caused these. Do you remember your testimony?

"A.   I can't say that I do.

        [Objection omitted.]

        . . . .

"Q.   *So you're unequivocal in your position that these could only have been inflicted by a spanking to the buttocks?*

"A.   *No, that's not what I said.*

"Q.   Okay. Then what did you say?

"A.   I said that the injuries are consistent with the—with the little girl's testimony, what she told me. It wasn't testimony, what she—her history that she gave to me." (Emphasis added.)

In context, Dr. Parr appears to have testified that it was highly probable that L.E.H.'s bruising was caused by a spanking. All parties agreed she had been spanked, and everyone agreed that Christopher had spanked her. Dr. Parr did not rule out all other possibilities, but he could not even think of a way in which the bruising could have been caused in a nonaccidental manner. No one suggested anyone other than Christopher who could have intentionally caused any physical injury or harm to L.E.H.

The SRS appeals committee did not provide any indication either how it understood the clear-and-convincing-evidence standard or why it concluded that the evidence was insufficient to meet it. Based on our review of the entire record, see K.S.A. 77-621(c)(7), we think it likely that the committee applied a higher, more difficult burden of proof than called for under *B.D.-Y.* We do not believe we should analyze that issue further, however, without a better understanding of the position of the appeals committee. After all, it is the responsibility of the administrative agency, not this court, to make the factual findings in this case. When we perceive that the agency's factual findings have been made under an incorrect standard, however, we may remand the matter to the agency for reconsideration under the correct standard. *E.g., In re Tax Appeal of Colorado Interstate Gas Co.*, 270 Kan. 303, 321, 14 P.3d 1099 (2000); see *Frick v. City of Salina*, 289 Kan. 1, 24, 208 P.3d 739 (2009); *State v. Toevs*, 2008 WL 5401488, at *2 (Kan. App. 2008) (unpublished opinion); *Berberich v. U.S.D. No. 609 S.E. Ks. Reg. Educ. Center*, 2007 WL 3341766, at *2 (Kan. App. 2007) (unpublished opinion). Without a better understanding of the basis for the agency's conclusion in this case, we are unable to analyze fully whether the agency's factual findings are supported by substantial evidence in light of the whole record, K.S.A. 77-621(c)(7), or whether the agency's action is "otherwise unreasonable, arbitrary, or capricious." K.S.A. 77-621(c)(8).

III. *No Other Issues of Merit Require Our Ruling.*

Donna has raised several other issues on appeal, but no issue of potential merit requires a ruling from us at this time. First, she claims that SRS limited the scope of the record before the hearing officer but then expanded the record to other matters before the appeals committee. But she has not provided a citation to the documents that she claims were wrongly supplied to the appeals committee; her claim fails in the absence of a citation to the record establishing the error. See *Kelly v. VinZant*, 287 Kan. 509, 526, 197 P.3d 803 (2008).

Second, she claims that the members of the SRS appeals committee lacked the competence and expertise appropriate for their

task. But she did not present that issue to the district court, and issues not raised before the district court generally cannot be raised on appeal. *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007). She has not claimed the application of any exception to that general rule. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 129 S. Ct. 1320 (2009).

Last, she claims that the district court failed to award her costs and fees. Of course, the district court did not rule in her favor; instead, it said that Donna could request relief after the appeal was completed in the event this court ruled in her favor. We will send the case back to the district court with directions to consider any award of fees and costs that may be appropriate. We express no opinion about whether that issue would be properly considered before a further ruling on the merits by the agency in response to our decision. We also note that because Donna has been successful on this appeal, she is entitled to recover the docket fee and any transcript expenses incurred in the appeal under Supreme Court Rule 7.07(a) (2009 Kan. Ct. R. Annot. 61).

## Conclusion

The SRS appeals committee refused to find substantiated child abuse for two reasons. We have found that its first reason—that the perpetrator must first be shown a danger to all children—was based on an incorrect understanding of the law. We are unable to determine whether its second reason—that it had not been shown by clear and convincing evidence that L.E.H.'s physical injuries were caused by Christopher's spanking—was based on the proper evidentiary standard. We therefore reverse the district court's judgment affirming the agency decision, vacate the agency's decision, and remand the case for further consideration. We remand the case first to the district court to consider any issues of the award of fees or costs that may properly be before it; we then direct the district court to remand the case to the agency for further consideration in light of the clear-and-convincing evidence standard set out in *B.D.-Y.* and the rulings made in this opinion.