NOT DESIGNATED FOR PUBLICATION

No. 112,927

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RUDY VARGAS,
*Appellant*,

v.

STATE OF KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; RICHARD T. BALLINGER, judge. Opinion filed April 22, 2016. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Roger B. McDaniel*, staff attorney, of Kansas Department for Children and Families, for appellee.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

*Per Curiam*:  Rudy Vargas appeals from a finding by the Kansas Department for Children and Families (DCF), which the district court affirmed, that he sexually abused his girlfriend's daughters, Sa.C. (D.O.B. 03/14/07) and Sl.C. (D.O.B. 09/14/05). As a result, Vargas' name must be placed on DCF's child abuse and neglect central registry, which prohibits Vargas from maintaining, residing, working, or volunteering at a childcare facility. See K.S.A. 2015 Supp. 65-516(a)(3); K.A.R. 30-46-15; *Sokol v. Kansas Dept. of SRS*, 267 Kan. 740, 742-43, 981 P.2d 1172 (1999). For the reasons stated below, we affirm the decision of the district court.

1

*Facts*

M.C. is the natural mother of three children: her son, Sp.C., who is not involved in this case, and her daughters, Sa.C. and Sl.C. The three children live with S.C., M.C.'s mother. S.C. adopted Sp.C. and Sa.C., but not Sl.C. M.C. had liberal contact with all three children; she visited the children daily and would occasionally take the girls overnight. M.C. moved in with her boyfriend Vargas in April 2011. The girls would visit and stay with M.C. at Vargas' home.

In May 2011, Sa.C. complained to S.C. that she was experiencing soreness. S.C. told her that perhaps the soreness was due to poor hygiene practices. Sa.C. responded, "Rudy did it, Rudy hurt me." Sl.C. also reported to S.C. that her genital area was sore. S.C. told M.C. about the girls' allegation. M.C. took Sl.C. to the hospital after complaining of pain when she urinated. Sl.C. had a yeast infection, but no injuries were present.

After the girls complained to S.C., she took the girls to see her daughter-in-law, Ty.C., S.C. was upset and accused Vargas of molesting the girls; the girls were present during the conversation. Ty.C. suggested Vargas submit to a polygraph test. In June 2011, Vargas did so and his answers were consistent with the truth.

Due to the results of the polygraph test, S.C. allowed the girls to have overnight visits again with M.C. and Vargas. The girls stayed the night with M.C. and Vargas on July 4, 2011. When S.C. picked them up the following day, both girls complained they were sore inside because "Rudy stuck circles in us." S.C. did not understand what the girls meant by "circles." S.C. also reported another incident that occurred on the weekend of August 19; again, the girls complained of soreness in the vaginal area.

On September 1, 2011, S.C. took Sl.C. to see Jill Johnson-Smith, a physician's assistant at Via Christi. S.C. informed her that Sl.C. had been touched in the vaginal area, that Sl.C. "has an active imagination," and that she was not sure what direction to take. Following an examination, Johnson-Smith noted some mild inflammation but did not see any sign of bruising or tears. Johnson-Smith advised S.C. to follow up on the accusations and advised that Sl.C. receive counseling. When Sl.C. continued to complain of soreness, S.C. took her back to see Johnson-Smith who told S.C. to take Sl.C. to the St. Joseph Hospital Emergency Room and to report it and have more of an investigation done.

In November 2011, DCF received a report of alleged sexual abuse of Sa.C. and Sl.C. Social worker Shelly Fields and Detective Aaron Kern of the Wichita Police Department interviewed S.C. and both girls separately. Fields asked the girls to identify various body parts on a female diagram. Sl.C. referred to her breasts as "boobs" and her vagina as her "front bottom." She denied being touched on her boobs, but when asked if she had ever been touched on her front bottom she nodded her head affirmatively. Sl.C. said her mom's boyfriend Vargas had touched her at his home in his bedroom. She said her clothes were on and Vargas touched her with "circles." Sl.C. said the circles were in a box in the closet. She also said three circles were in the box and they were different colors. She indicated Vargas had touched her four times and "it hurt a little bit when [he] touched her with the circles."

Next, Detective Kern and Fields interviewed Sa.C. Sa.C. identified her breasts as her boobs and her vagina as her "pee pee." She indicated Vargas had touched her "boobs." She also said, "[Vargas] is a bad guy and [he] puts circles in our pee pee." She explained the circles were pink, purple, and green and were stored in a hard box in the closet. The touching occurred while her clothes were off. Sa.C. said she was lying on a pillow on the bed in Vargas' house when this occurred. Sa.C. said Vargas had touched her four times. Detective Kern believed the girls used age-appropriate language, and it did not "appear that they could be coached in this much of an interview and have the same

3

consistencies throughout." He also noted Vargas submitted to a second polygraph test, which he failed. Fields believed the finding of sexual abuse was substantiated due to the girls' consistent statements.

The girls were also examined and interviewed by Karen Wilson-Diehl, a forensic nurse examiner. She spoke with Sa.C. first and asked her to identify the names of various body parts. She then asked if anybody had touched Sa.C. in a way that made her feel mad or sad. Sa.C. responded that Vargas put "circles in her pee pee" and indicated he was a "bad guy." Next, Wilson-Diehl conducted a similar interview with Sl.C. When asked if anybody touched her in a way that made her feel mad or sad, she said her mom's boyfriend Vargas had touched her "with little round circles in [her] front bottom." She clarified that her front bottom was "where the pee comes out." Sl.C. said it made her mad when Vargas touched her and it hurt. Wilson-Diehl asked Sl.C. to tell her more about the incident. According to Wilson-Diehl's testimony, Sl.C. said:

"[W]e were in the bedroom in [Vargas'] house and I went to the closet and found the circles, he came in and touched me with the little round circles. They were different colors. It was just me and my sister who was in the room with him. My mom was sleeping. He touched me in my front bottom and I went out to my mom, she was sleeping. [Sa.C.] was still in there. And I only told my grandma."

Following the interviews, Wilson-Diehl conducted physical examinations on both girls. She examined Sl.C. first. She found a laceration that was starting to heal at 10 o'clock on the labia minora. Wilson-Diehl testified, "There shouldn't be any injury in that area. But we don't know what causes injury. Some sort of blunt trauma would cause a laceration, or if a blunt object hits the skin and stretches it to the point it can't stretch any more than it tears."

Next, Wilson-Diehl examined Sa.C. Wilson-Diehl noticed "a labial adhesion, which can happen in girls that age, and . . . [it was] at 6:00 o'clock where the labia minor

4

come together, it was fused back together and that can be from hygiene as well." She did not note any acute or healed trauma on Sa.C. After the examinations, Wilson-Diehl talked to S.C. and the girls about hygiene issues and reported the results of the interviews and the examinations to Detective Kern.

A hearing with the Kansas Office of Administrative Hearings was held on January 31, 2013. The following testified on behalf of DCF: S.C.; Wilson-Diehl; Detective Kern, and Fields. The following testified for Vargas: Ty.C.; T.C., S.C.'s son; Johnson-Smith; and M.C. Vargas was present but did not testify.

At the hearing, both Ty.C. and T.C. said they did not believe the allegations against Vargas. Ty.C. testified S.C. did not like Vargas dating her daughter. T.C. testified he was worried about his mother; he did not know if it was due to medication, but she seemed to be a different person. He said, "She gets things mixed up all the time, like dates and times." Additionally, both Ty.C. and T.C. testified the girls were not afraid around Vargas. They also stated Detective Kern met with them, and they both got the impression that Detective Kern "acted . . . like he already had his conviction"—that he wanted Vargas to be guilty.

M.C. testified that following the allegations in May 2011, she immediately took the girls to the hospital. M.C. said she would not lie for Vargas and if she thought Vargas had committed these acts against the girls, "[H]e wouldn't be sitting there." She further testified Vargas was never alone with the girls; she would walk outside to check the mail, but that was the only time the girls were alone with him. M.C. stated she might lie down on the couch to watch television, but she would never fall asleep because the water softener was too loud. As for the sleeping arrangements, M.C. said she and the girls shared a bed when they stayed the night and Vargas slept in a different bedroom.

5

M.C. described Sl.C. as an imaginative child; she addressed an incident where Sl.C. accused her sister of "touching her in the privates" at school. M.C. believed the adults at S.C.'s home participated in sexual conversations while the girls were present. She stated Sl.C. listened to everything, including the adult conversations. M.C. believed Sl.C. made up the allegations because S.C. told the girls that if M.C. and Vargas were not in a relationship, then M.C. would come home. M.C. also stated S.C. did not like Vargas because she believed he was too old for M.C.

M.C. also explained she believed Sl.C.'s skin sensitivities were the cause of her vaginal soreness. She said Sl.C. is "allergic to everything" such as cologne, certain clothing, soaps, laundry detergent, shampoos, and certain foods. Sl.C. would experience breakouts and hives, and she "starts scratching everywhere." M.C. said Sa.C. did not experience any allergic reactions; however, she often mimicked Sl.C. When asked if Sa.C. might mimic Sl.C. as to the allegations against Vargas, M.C. stated, "I think [Sa.C.] thinks it is a game, honestly. Everything is funny to [her]. She'll sit there and tell a lie and I am like, what's going on. And I was like, I didn't do that, [Sa.C] likes to get a [rise] out of people. She really does. She's ornery. She is the ornery kid."

After hearing the testimony and reviewing the reports, the presiding officer entered an initial order affirming DCF's findings that Vargas sexually abused Sl.C. and Sa.C. The presiding officer further ordered DCF to add Vargas to the central registry. Vargas appealed; the State Appeals Committee affirmed the decision of the presiding officer and adopted and incorporated the findings of fact and conclusions of law into its final order. Vargas filed a petition for review of an agency action. The district court conducted a bench trial on September 29, 2014.

Upon reviewing the record, including the agency's hearing and findings, the district court held clear and convincing evidence supported the finding Vargas sexually

abused Sl.C. and Sa.C. The district court affirmed the agency's action. Vargas timely appeals.

*Analysis*

On appeal, Vargas asserts the following three issues: (1) DCF failed to present sufficient evidence to support a finding of sexual abuse; (2) DCF failed to present clear and convincing evidence Vargas sexually abused Sl.C. and Sa.C.; and (3) the girls' allegations were unbelievable. Before addressing each issue, we first set forth the proper standard of review.

*Our standard of review*

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, governs appellate review of a state agency's decision. Upon such review, this court exercises the same statutorily limited review of the agency's action, as did the district court, as though Vargas' petition had been made directly to the appellate court. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010). On appeal, the burden is on Vargas to show DCF's actions were invalid. K.S.A. 2015 Supp. 77-621(a)(1).

Under the KJRA, an appellate court must determine whether the agency's factual findings are supported by substantial competent evidence, in light of the record as a whole. See K.S.A. 2015 Supp. 77-621(c)(7), (d).

> "For purposes of this section, 'in light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record . . . cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the

7

agency's explanation of why the relevant evidence in the record supports its material findings of fact." K.S.A. 2015 Supp. 77-621(d).

"Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion." *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 916, 157 P.3d 1109 (2007). Whether such evidence exists is a question of law subject to de novo review. See *Redd v. Kansas Truck Center*, 291 Kan. 176, 182, 239 P.3d 66 (2010). In reviewing the evidence, this court shall not reweigh the evidence or engage in de novo review. K.S.A. 2015 Supp. 77-621(d).

K.S.A. 2015 Supp. 38-2226(a) requires DCF to investigate allegations of child abuse or neglect. If DCF substantiates by clear and convincing evidence that a person committed an act of abuse or neglect, that person's name will be placed on the agency's child abuse and neglect central registry. See K.A.R. 30-46-10(d), (j); K.A.R. 30-46-15.

Whether abuse or neglect occurred is determined based on the statute and regulations in effect at the time the acts allegedly took place. *Redd*, 291 Kan. 176, Syl. ¶ 1; *L.E.H. v. Kansas Dept. of SRS*, 44 Kan. App. 2d 798, 802, 241 P.3d 167 (2010). At the time of the girls' first allegation, sexual abuse was defined as: "any contact or interaction with a child in which the child is being used for the sexual stimulation of the perpetrator, the child or another person." K.S.A. 2010 Supp. 38-2202(dd); see K.A.R. 30-46-10(j). This same definition applies today. K.S.A. 2015 Supp. 38-2202(dd).

*Evidence of use for sexual stimulation*

Vargas' first argues DCF failed to submit any evidence to show he intended to use the interaction between himself and the girls for purposes of sexually stimulating himself, the girls, or another person. He further contends the agency and the district court failed to

8

make the requisite findings of fact and conclusions of law as to this element of sexual abuse.

Vargas focuses his argument on the lack of direct evidence presented at the hearing to show he committed the alleged abuse with the intent of sexually stimulating himself. However, direct evidence is not required to prove this allegation. Our Supreme Court has consistently held that circumstantial evidence of such intention is sufficient in these types of circumstances. See *State v. Griffin*, 279 Kan. 634, 638, 112 P.3d 862 (2005) ("Intent, a state of mind existing at the time an offense is committed, does not need to be and rarely can be directly proven. It may be established by acts, circumstances, and inferences reasonably deducible from the evidence of acts and circumstances,"); see also *State v. Brooks*, 298 Kan. 672, 689, 317 P.3d 54 (2014) (A conviction of even the gravest offense can be based entirely on circumstantial evidence.).

Furthermore, the KJRA outlines the eight scenarios under which relief for Vargas may be granted. K.S.A. 2015 Supp. 77-621(c). The only scenario alleged here is "the agency action is based on a determination of fact, made or implied by the agency, that is not supported" by substantial competent evidence. K.S.A. 2015 Supp. 77-621(c)(7). Based on the clear language of this statute, the agency's action could be determined based on the implied fact that Vargas touched the girls for purposes of sexual stimulation. Here, testimony and reports showed the girls complained of soreness in their genital areas; they used age-appropriate language to identify the alleged sexual abuse; they both stated Vargas had touched them in ways that made them feel sad or mad; their stories were consistent; and the forensic nurse examiner found a laceration on Sl.C.'s labia minora. Thus, in light of the record as a whole, substantial competent evidence supports the finding that Vargas touched the girls for purposes of sexual stimulation.

9

*Substantial Competent Evidence*

Vargas next contends DCF failed to provide clear and convincing evidence that he sexually abused Sl.C. and Sa.C. Vargas argues, *inter alia*, that the district court relied on the consistency of the stories as the "only basis for its finding"; it "was pure speculation" that Vargas touched the "'girls' vaginal areas with a vibrator'"; and the presiding officer "ignored specific evidence" in addressing an unclear timeline. We briefly address each of these claims.

First, Vargas claims the district court relied on only one piece of evidence—the girls' story—to make its ruling. But the record contradicts that assertion. At the civil bench trial, the district court shared its thoughts and allowed counsel to address its concerns. The district judge said, "First of all, I agree with [Vargas]. His interpretation of the evidence makes very suspect the laceration." The district court further stated that even if it agreed with that interpretation, it did not have the authority to substitute its ruling for the agency's ruling. The district court noted the agency's view of M.C.'s testimony as well as the consistency of the girls' story. After both parties responded to the district court's statements, the district court affirmed the agency's action stating, "[T]his Court cannot find any legal, technical issues with either the finding or the factual basis from the evidence, that they refute and heard and depended on specifically." The district court correctly found it did not have the authority to substitute its ruling for the agency's and clear and convincing evidence supported the agency's decision. We take the same approach as the district court—we must determine whether substantial competent evidence supports the agency's finding that clear and convincing evidence was provided that Vargas sexually abused the girls.

Second, Vargas states the presiding officer erred by calling the object that Vargas used to make contact with the girls a "vibrator." It is true that nobody expressly confirmed what the girls meant when they said Vargas had "stuck circles in them."

10

However, Sa.C. explained the circles were pink, purple, and green and were stored in a hard box in the closet. Similarly, Sl.C. said Vargas touched her with circles which were in a box in the closet and that three different colored circles were in the box. M.C. testified she had a purple vibrator in the closet. Thus, the presiding officer's conclusion that the circles referred to a vibrator may have been a reasonable inference. But even if that inference was not supported by clear and convincing evidence, no error appears as the statute prohibits "contact or interaction," which the facts clearly show. See K.S.A. 2010 Supp. 38-2202(dd); K.A.R. 30-46-10(j). Therefore, any misstatement does not establish that DCF failed to provide clear and convincing evidence to support its finding of sexual abuse.

Finally, Vargas states the presiding officer "ignored specific evidence that refuted" his findings. He also challenges the finding that M.C.'s testimony was not credible. He further addresses the testimony regarding the laceration found on Sl.C. He questions the "basic physics" of how he could have caused a labial laceration when she had admitted she was fully clothed when he touched her. Additionally, Vargas claims the story told by the girls was unbelievable and that S.C. told different stories.

Vargas is correct that three versions of the girls' story were presented at the hearing. But Vargas is asking this court to reweigh conflicting evidence, including determining witness' credibility, which is not the role of this court. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010). The agency reviewed various reports and testimony, and the evidence supports a finding of sexual abuse under K.S.A. 2010 Supp. 38-2202(dd) and K.A.R. 30-46-10(j).

Having reviewed the evidence both supporting and detracting from the agency's finding, we determine that the evidence supporting the agency's factual finding of sexual abuse is substantial when considered in light of all the relevant evidence in the record.

11

Affirmed.