NOT DESIGNATED FOR PUBLICATION

No. 112,723

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN PAUL BUTLER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; FREDERICK W. CULLINS, judge. Opinion filed April 22, 2016. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, for appellee.

Before MALONE, C.J., MCANANY and POWELL, JJ.

*Per Curiam*: Steven Paul Butler appeals his conviction for aggravated criminal sodomy, arguing (1) the district court denied him his constitutional right to present a defense, (2) the aggravated criminal sodomy jury instruction given orally was incorrect, (3) the preliminary jury instruction that a mistrial would be a tremendous expense was erroneous, and (4) cumulative error necessitates reversal of his conviction. We disagree and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Butler was a senior pastor at the Community Christian Church in Independence, Kansas. In November 2009, after returning from a mission trip in Africa, Butler began teaching the children's group at church on Wednesday evenings while the parents were in Bible study. Both J.J. and M.M. were in this group.

In February 2010, 3-year-old J.J. was speaking with his mother about people he loved. J.J. told his mother he loved her, his stepfather, and everyone in his family. He then said, "And I love [Butler] too. . . . But can you please tell [Butler] to stop sticking his finger in my butt, because it hurts?" In response to this disclosure, J.J.'s mother called an abuse hotline.

J.J. also disclosed the abuse to other people. He saw psychologist Dr. Charles Krall five times between February 2010 and July 2010. During the first and second sessions, J.J. stated Butler had "sticked his hand in my butt," that this happened only one time, and that it occurred outside. During the third and fourth sessions, J.J. stated Butler "[stuck] his finger in my butt," that this happened more than one time, and that it took place in the office. During the fifth session, Krall and J.J. did not talk about the specific acts.

Also in February 2010, J.J. disclosed the abuse to a forensic interviewer at the Child Advocacy Center in Pittsburg, Kansas. A forensic interview is an interviewing technique to help children disclose their story. During the interview, when asked where Butler touched him, J.J. pointed to his buttocks and then to the buttocks on the drawing of a boy. J.J. said the touching occurred one time underneath his clothes while his clothes were on. J.J. also said Butler kicked him. He made somewhat conflicting statements as to the location of the touching. First he said it occurred in the playroom, then the bathroom,

2

and then he changed back to the playroom. There was a bathroom right outside the door of the playroom.

In March 2010, J.J. told his preschool teacher that Butler "sticked his fingers in my bottom." This comment occurred spontaneously after J.J.'s teacher said, "We don't touch each other's bottoms" when one of J.J.'s classmates hit another child on the buttocks. The teacher reported this incident to the Kansas Department of Social and Rehabilitation Services (SRS) hotline. At some point SRS investigated J.J.'s allegations and found the claims to be unsubstantiated.

Six-year-old M.M. also made allegations against Butler several months after J.J.'s initial disclosure. M.M. testified that Butler had touched M.M.'s penis over his clothes. In an interview, M.M. stated that he was on medication and sometimes had trouble telling the difference between dreams and reality.

Butler was charged with one count of aggravated criminal sodomy, an off-grid person felony, for the incident involving J.J. and one count of aggravated indecent liberties with a child, an off-grid person felony, for the incident involving M.M.

At trial J.J. testified that Butler touched him on his buttocks with Butler's finger and the finger was placed inside J.J.'s buttocks in the bathroom of the church. The jury was also presented with Butler's voluntary interviews with police regarding the allegations of abuse, during which he denied committing the abuse.

The jury convicted Butler of aggravated criminal sodomy against J.J. but acquitted him of aggravated indecent liberties against M.M. Butler received a life sentence without the possibility of parole until after 25 years.

Butler timely appeals.

3

Butler first argues the district court erred when it excluded a report and letter written by SRS finding that J.J.'s abuse allegations were unsubstantiated. As Butler's defense was that he did not sexually abuse J.J., Butler argues the exclusion violated his constitutional right to a defense. The State argues the evidence was not relevant. Our review of whether a defendant has been denied the right to present his or her defense is de novo. *State v. Roeder*, 300 Kan. 901, 927, 336 P.3d 831 (2014), *cert. denied* 135 S. Ct. 2316 (2015).

A defendant has a right to present his or her theory of defense, but that right is subject to some constraints:

> "Under our state and federal constitutions, a defendant is entitled to present the theory of his or her defense. *State v. Evans*, 275 Kan. 95, 102, 62 P.3d 220 (2003). The defendant's fundamental right to a fair trial is violated if relevant, admissible, and noncumulative evidence which is an integral part of the theory of the defense is excluded. See *State v. Mays*, 254 Kan. 479, 487, 866 P.2d 1037 (1994).

> "However, the right to present a defense is subject to statutory rules and case law interpretation of the rules of evidence and procedure. *State v. Thomas*, 252 Kan. 564, 573, 847 P.2d 1219 (1993). An appellate court's first consideration when examining a challenge to a district court's admission of evidence is relevance." *State v. Patton*, 280 Kan. 146, 156, 120 P.3d 760 (2005), *disapproved on other grounds by State v. Gunby*, 282 Kan. 39, 55-56, 144 P.3d 647 (2006).

A.      *The record on appeal does not establish the SRS findings were relevant.*

Generally speaking, "all relevant evidence is admissible." K.S.A. 60-407(f). Evidence is relevant when it has "any tendency in reason to prove any material fact."

K.S.A. 60-401(b). This definition encompasses two elements: "a materiality element and a probative element. Evidence is material when the fact it supports is in dispute or in issue in the case and is probative when it has a logical tendency to prove a material fact. [Citations omitted.] . . . [M]ateriality is reviewed de novo." *State v. Lowrance*, 298 Kan. 274, 289, 312 P.3d 328 (2013). "Probative evidence furnishes, establishes, or contributes toward proof. [Citation omitted.] The decision as to whether evidence is probative is reviewed for abuse of discretion. [Citation omitted.]" *State v. Marks*, 297 Kan. 131, 142, 298 P.3d 1102 (2013).

At Butler's preliminary hearing, Butler's trial counsel asked J.J.'s mother about the SRS investigation and the investigation's results. This prompted the State to file a motion in limine prohibiting Butler from referencing the SRS investigation, report, or letter at trial and prohibiting the SRS report and letter from being admitted into evidence. The district judge granted the motion because he found that the SRS report was based on a different evidentiary standard, which would confuse the jury, and admitting the report would invade the province of the jury.

As an initial matter, we find it difficult to examine Butler's claim of error.

"The appellant bears the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. *State v. Valdez*, 266 Kan. 774, 792, 977 P.2d 242 (1999). In the absence of such a record, an appellate court presumes that the action of the trial court was proper. See Supreme Court Rule 3.02 ([2015] Kan. Ct. R. Annot. 20)." *State v. Decker*, 275 Kan. 502, 507, 66 P.3d 915 (2003).

Unfortunately, the SRS report and letter were not included in the record on appeal. Without this report, it is impossible to know on what evidence SRS based its investigation and conclusion. From a review of the record, it is only clear that someone from SRS was present at J.J.'s first forensic interview. Because Butler did not ensure that SRS's report and letter finding J.J.'s claims of abuse unsubstantiated were contained in the

5

record on appeal, we are unable to evaluate whether such evidence is relevant and whether the district court erred in excluding it.

However, assuming for the sake of argument that SRS's investigation focused on whether Butler had penetrated J.J.'s anus with his finger as alleged and found such allegation unsubstantiated, we agree with the State that such a finding was not relevant. Butler contends that the SRS's finding of abuse against J.J. as unsubstantiated would have contributed proof that Butler did not commit the act of aggravated criminal sodomy. However, our court has previously stated that SRS's failure to substantiate a claim of abuse does not mean the abuse did not happen. *In re C.W.*, No. 113,547, 2015 WL 5311260, at *20 (Kan. App. 2015) ("Even though [SRS] could not substantiate the claim . . . , this does not mean the abuse did not happen."). Therefore, we cannot agree that such a finding would have contributed towards Butler's proof that he did not commit the act charged.

B.      *The district court did not err in granting the motion in limine.*

However, even if we assume that SRS's report and letter were relevant, we must still evaluate whether the evidence was properly admissible. When determining if a district court correctly granted a motion in limine, we conduct a multistep analysis. *State v. Shadden*, 290 Kan. 803, 817, 235 P.3d 436 (2010).

> "Under the multistep evidentiary analysis, the first question is relevance. . . . [Citation omitted.] The second step is to determine which rules of evidence or other legal principles apply. On appeal, this conclusion is reviewed de novo. *Boldridge v. State*, 289 Kan. 618, Syl. ¶ 10, 215 P.3d 585 (2009). In the third step of the analysis, a district court must apply the applicable rule or principle. The appellate court's standard of review of this third step varies depending on the rule or principle that is being applied. Some rules and principles grant the district court discretion, while others raise matters of law. *State v. Riojas*, 288 Kan. 379, 383, 204 P.3d 578 (2009)." 290 Kan. at 817.

6

Here, the district judge granted the motion because he found that the SRS report and letter were based on a different evidentiary standard, which would confuse the jury, and admitting the report and letter would invade the province of the jury. Each basis for exclusion will be discussed in turn.

1. *Exclusion on the basis of differing burdens of proof*

Assuming relevance is established, the second step of the analysis requires we move to a de novo review of the applicable legal principles. "[A] limine order may be appropriate because the introduction or mention of the evidence may cause unfair prejudice, confuse the issues, or mislead the jury." *Shadden*, 290 Kan. at 816. Such determination of appropriateness rests in the discretion of the district court; hence, we review the decision for an abuse of discretion. 290 Kan. at 818 (citing *Luce v. United States*, 469 U.S. 38, 40, 105 S. Ct. 460, 83 L. Ed. 2d 443 [1984]). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

The district court excluded the SRS's report and letter partly because the different legal standards could confuse the jury. This was the correct legal standard to employ because "[t]o find that substantiated abuse has occurred, SRS requires that the evidence be clear and convincing." *L.E.H. v. Kansas Dept. of SRS*, 44 Kan. App. 2d 798, 807, 241 P.3d 167 (2010); see K.A.R. 30-46-10(j). This standard falls between "a preponderance of the evidence and beyond a reasonable doubt." *In re B.D.-Y.*, 286 Kan. 686, 691, 187 P.3d 594 (2008). The clear and convincing evidence standard requires "that the factfinder believes that the truth of the facts asserted is highly probable." 286 Kan. at 697.

7

Moving to the third step in the analysis, we find that the district court did not abuse its discretion in excluding such evidence on this basis. Admission of SRS's report and letter would have required an examination of SRS's investigation procedures, an explanation of the differing evidentiary standard used by SRS, and why SRS reached the conclusion it did instead of simply allowing the jury to examine the evidence presented at trial and judge that evidence according to the instructions given by the district court. We cannot find that no reasonable person would agree with the district court; therefore, the court did not abuse its discretion by excluding SRS's report and letter.

2. *Exclusion on the basis of invading the province of the jury*

Again assuming relevance is established, the second step of the analysis requires that we move to a de novo review of the applicable legal principles. See *Shadden*, 290 Kan. at 816-17.

> "The Sixth Amendment to the United States Constitution provides: '. . . the right
> to a . . . trial, by an impartial jury . . . .' This right to a jury trial includes allowing the jury
> to decide the materiality of evidence supporting an element of the crime charged.
> [Citations omitted.] . . .
>     . . . .
> "It is the role of the jury to determine the facts independent of the trial court and
> to apply the law to those facts in reaching its decision." *State v. Stieben*, 292 Kan. 533,
> 537, 256 P.3d 796 (2011).

Finally, it is for the jury alone to determine the credibility of witnesses. See *State v. Williams*, 299 Kan. 509, 527, 324 P.3d 1078 (2014). The district court properly utilized these legal principles in determining whether the SRS report and letter should have been admitted.

Under the third step, analyzed here de novo, the district court correctly applied these legal principles when granting the State's motion in limine. See *Shadden*, 290 Kan. at 818. The district judge stated that admitting the SRS report and letter, either physically or by testimony of witnesses, would be like telling the jury, "You don't have to rule. . . . [S]omebody's already made this decision for you." Moreover, at trial, the jury would not have had access to the same evidence used by SRS as the basis for its finding and report. But a jury must be allowed to hear what evidence is brought before it and make its determination based solely on that evidence. See *State v. Magallanez*, 290 Kan. 906, 927, 235 P.3d 460 (2010). Therefore, we agree with the district court that the SRS report and letter would have invaded the province of the jury as the factfinder at trial. See *State v. Steadman*, 253 Kan. 297, 304, 855 P.2d 919 (1993) (police witness may not offer opinion testimony that defendant was guilty of crime charged); *State v. Lash*, 237 Kan. 384, 385, 699 P.2d 49 (1985) (psychologist may not offer opinion testimony that victim had been sexually molested by defendant). Additionally, we observe that the admission of the report and letter, depending on their contents, could have improperly commented on the credibility of the complaining witness. See *State v. Jackson*, 239 Kan. 463, 470, 721 P.2d 232 (1986) (social workers may not offer opinion testimony that victim told the truth she was sexually abused by defendant). The district court did not err by granting the State's motion in limine, and Butler's constitutional right to present a defense was not violated.

DID THE COURT COMMIT REVERSIBLE ERROR BY
ORALLY MISSTATING A JURY INSTRUCTION?

Second, Butler claims the district judge improperly instructed the jury orally that: "'Sodomy means *any* penetration, however slight, of a male by any body part or object.'" (Emphasis added.) However, the written jury instructions provided to the jury correctly stated: "'Sodomy' means *anal* penetration, however slight, of a male by any body part or object." (Emphasis added.) Butler argues this error is reversible because without a proper oral delivery of the sodomy instruction the jury could not have returned a fair verdict.

9

Butler did not object to the oral misstatement of the jury instruction, so we review the record for clear error. See K.S.A. 2015 Supp. 22-3414(3); *State v. Williams*, 295 Kan. 506, Syl. ¶¶ 3, 4, 510, 286 P.3d 195 (2012). Under this framework, we first must consider whether the instruction was in error by reviewing de novo whether the instruction was both legally and factually appropriate. See *State v. Herbel*, 296 Kan. 1101, 1121, 299 P.3d 292 (2013) (quoting *Williams*, 295 Kan. 506, Syl. ¶ 4). If an error is found, we then conduct a reversibility inquiry during which we assess whether we are "firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal." *Williams*, 295 Kan. 506, Syl. ¶ 5.

Butler argues that he should not be subject to the clear error standard because his trial counsel was not given an opportunity to object outside the presence of the jury as required by K.S.A. 2015 Supp. 22-3414(3). We disagree. Butler's trial attorney was very experienced and could have simply requested the jury be excused or asked to approach the bench and then stated his objection. Counsel did not exercise this opportunity, so the clear error standard of review is applicable.

Turning to the legality of the instruction, we are not convinced Butler is correct in his statement that the oral sodomy instruction was legally inappropriate. While it is true the jury should have received an oral instruction that sodomy required *anal* penetration as defined by K.S.A. 2015 Supp. 21-5501(b), rather than *any* penetration, it appears from the record the jury was told to rely on the written instructions. The district judge stated to the jury:

> "What I'm going to do now is I'm going to have Officer Ray pass out a copy of the instructions as I read them to you.

10

"And then what will happen when you go into the jury room, each individual juror has their own set of instructions. . . .

. . . .

"Now, with that being said, I need to read some instructions to you. If I misstate something, as indicated, you have your own set of instructions."

Because the jury was to rely on the written instructions, which were correct, and not any oral misstatements of the instructions given by the district judge, we are not persuaded the district court erred.

But even if the oral instruction was a misstatement of the law and, therefore, legally inappropriate, this error would not require reversal. Given the evidence in the record, it is illogical that the jury could have convicted Butler for acts not constituting sodomy. Although Butler claims that the oral instruction allowed the jury to convict him for hypothetical legal acts such as cleaning J.J.'s ears, there is no evidence in the record that Butler penetrated J.J.'s body in any manner other than anally. This precludes the possibility that the jury acted only on the oral version of the instruction and convicted Butler for performing a legal act. The record contains ample evidence that Butler anally penetrated J.J. in violation of the law. Paired with the correct jury instruction provided in written form that mitigated any possible confusion caused by the oral jury instruction, we are not firmly convinced the jury would have reached a different verdict had the oral instruction been correctly presented. See *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484, *cert. denied* 135 S. Ct. 728 (2014).

DID THE DISTRICT COURT COMMIT REVERSIBLE ERROR BY INSTRUCTING THE JURY THAT A MISTRIAL WOULD BE A TREMENDOUS EXPENSE?

Third, Butler argues that the district court erred during preliminary instructions when it stated that a mistrial would be a tremendous expense and inconvenience for the parties, the court, and the taxpayers. During preliminary instructions, in the context of

11

cautioning the jury regarding independent investigation, the district judge read the following instruction to the jury:

> "'Any juror who violates these restrictions I have explained to you jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire process to start over. As you can imagine, a mistrial is a tremendous expense and inconvenience to the parties, the Court, and the taxpayers.'"

Defense counsel did not object to the district court's preliminary instruction.

Our Supreme Court recently addressed this issue. In *State v. Tahah*, 302 Kan. 783, 792, 358 P.3d 819 (2015), *cert. denied* 577 U.S. ___ (February 29, 2016), the district court instructed the jury that a mistrial would be a "'tremendous expense and inconvenience to the parties, the Court and the tax payers.'" This language is identical to the language used in the preliminary instruction to the jury in the case at hand. The *Tahah* court held that such language was not an error:

> "The instruction occurred at the start of trial, before the presentation of evidence, and warned jurors of the dangers of a mistrial resulting from their own misconduct. As such, its coercive effect (to prevent juror misconduct) is entirely proper and justified. Moreover, because its purpose is proper, the instruction is factually accurate. The prospect of a mistrial due to juror misconduct—especially when viewed from the pretrial vantage point of the parties—is, in fact, equally inconvenient and undesirable to both parties. In particular, it interferes with the defendant's right to a speedy resolution of the criminal allegations against him or her. . . .

> "Juror misconduct imposes grave costs not only to the parties and others involved in the trial process, but significantly to the integrity of our jury trial criminal justice system itself, which depends on the honest and ethical behavior of jurors. . . . In light of these considerations, we hold that the warning against juror misconduct contained in PIK Civ. 4th 101.12 is both legally and factually accurate in the criminal context as well as the civil." 302 Kan. at 795.

12

*Tahah* is dispositive on this issue. The district court did not err by giving this preliminary jury instruction.

## DOES CUMULATIVE ERROR REQUIRE REVERSAL OF BUTLER'S CONVICTION?

Finally, Butler contends that the errors he complains of, if not individually requiring reversal, require reversal due to cumulative error. Unfortunately for Butler, no cumulative error will be found when the record fails to support the errors defendant raises on appeal. See *State v. Betancourt*, 299 Kan. 131, 147, 322 P.3d 353 (2014). Because we do not find any errors in Butler's other arguments, the cumulative error doctrine does not apply.

Affirmed.